Ms. Lipkin representing the petitioner, Mr. Gill. Mr. Gill's claim was primarily on the argument that the immigration judge and the board respectively erred in making an incredibility determination in his case. The incredibility determination was predicated on what really were minor and trivial inconsistencies in his testimony regarding events that occurred sometime before the commencement of the proceedings before the immigration court. And the petitioner contends that the immigration judge failed to give the appropriate weight to his specific, detailed testimony regarding the incidents of arrest by the Punjabi police in his matter. Mr. Gill's claim was primarily on the incidents of arrest by the Punjabi police in his matter. And the board erred in failing to remedy the mistakes the I.J. had made by summarily affirming that decision without giving any specific details on the basis upon which it affirmed the decision. Some of the points that Mr. Singh contends that the I.J. erred on were mistakes in dates. And throughout the length of his direct examination, even though it took a long time to recall certain dates, he did eventually recall them on his own. That he hesitated or, as the I.J. characterized, wavered in his answer is false, because, first of all, he was operating through the assistance of a court-appointed interpreter. And as we can read through the transcript, that interpretation was a literal interpretation of every word spoken. And, as we can see in the transcript, that interpretation was a literal interpretation of every word spoken. So sometimes perhaps the essence of what he said may not have been so artfully conveyed. Part of the difficulty was that he said that he was arrested during a rally in support of the Operation Blue Star anniversary, but he wasn't able to give any details, which is a very significant event in terms of that political calling, if you will. So don't you think that went to the bottom claim, if he couldn't describe the event that precipitated his arrest, that was the basis of his claim? I would, Your Honor, except the immigration judge didn't really give him a chance to give a lot of detail. She focused instead on his difficulty in recalling the date of the arrest. And several pages of the transcript support that, that he was never given the chance again to say, well, other than what the date of it was, what was it about, how many Sikhs were killed during the attack in 84, what was the purpose of your rally, or who organized it, or how many people attended. He's never posed those questions. Mr. Zipkin, there's no reply brief here. And I'm sure, as you know, the government raises something of a jurisdictional challenge to this case. Are you referring to the fact that the board put a phrase in its decision that the arguments were not meaningfully addressed on the brief? Is that what you mean? Yeah. You know, on the argument starting on page 36 of the red brief, they say that the two-wave review of some of the bases of the board's decision, which you really didn't challenge. Well, Your Honor, again, the board's decision was a small paragraph. The first four sentences simply affirming the lower court's decision, and then one sentence stating that the attorney representing petitioner on the brief before the board didn't meaningfully address certain aspects of the judge's decision on the transcript, pages 6-9 of the hearing itself. That's a very vague kind of argument. And without actually stating what the attorney had failed to address. So, I think that when we wrote the briefs for this case, we did address that by saying that the court's, the board's summary affirmance failed to address all those issues, and, in fact, there are several credibility issues that the IJ reviewed, and we did address those as well. And we ruled on an error. So, counsel, what's your response to the government's argument that your client's lack of clarity regarding the last time he saw his brother was central to his claim? That would be something that he would remember, wouldn't you think? You know, Your Honor, I agree with you on that. And if you go to page 15 of my brief, I had. Page what? Fifteen of my brief. Go ahead. I had actually written down that short colloquy between the judge and the petitioner, and I think that that exchange can be construed in two different ways. Either one, he's thinking she's asking him what was the rally, and the other way to read it is to say, okay, she was asking him when was the last time he saw his brother. But if you look at his testimony, he said that he extracted the bullet from his brother's leg October 9, 1995, and treated him about a month later, 25, 26 days later. And that would have put him in the December. Go back to that testimony you cited. Sure. The question was when did you last see him, and he said at the rally, and then I saw him in December. And she said what year was the rally? He said 94. Well, Your Honor, throughout his testimony he had some difficulty remembering dates. He stated my memory is not so great, especially from all the injuries I suffered. During two of his arrests, he was very brutally tortured. During one of them, dragged behind a horse. I'm sure his head was, you know, injured in that as well. But when given a chance, he did in the end, on his own without prompting, recall the correct date and that the year was 95. But the time frame between August and December and the treatment of the brother in October for the bullet wound all corresponds and corroborates what's written in his declaration. So that time frame is the same, even if he was off by a year, which later, when given a chance, he did state the correct year. And he at all times gave very detailed testimony regarding the actual facts of the persecution he suffered  So that he was very detailed on. What is the status of the adjustment of status application? Yes, Your Honor. I work with Mr. Dariwal's office, who represents the petitioner. And his I-130, I believe, is approved. And he hasn't filed the I-45, the adjustment of status application, as this Court and the Board of Appeals had denied the motion to remand. So he has not filed that yet. He has not filed the application? He filed a – there's two kinds of petitions for immigration purposes. One is the alien relative petition form I-130, which is approved. And then after that's approved, you can file your I-45 adjustment of status application. He's not filed that second component yet, after this Board had – after the Ninth Circuit has denied his motion to remand it, in order to file that. Oh, so you have to move to reopen and then file it? Can't you just file it separately and independently of this proceeding? Well, Your Honor, when you're not in immigration proceedings, you can file what's called a one-step packet with the BCIS. But when you're in proceedings, you have to file the adjustment of status application before the court. You can't just mail it in. Whereas you can mail the alien relative petition, which he's done so. And so are you saying then that these proceedings have to be completed before that can be filed? Is that what you're saying? At what point would he be able to file the second part? I think as soon as the proceedings are remanded to the immigration court, and he would have a master calendar tell the judge that he's – show evidence of the I-130, the relative alien petition having been approved, and she would set an individual hearing date to allow him to submit the adjustment of status application and have that – Not remanded. Then I guess he would have to, you know, comply with the order of removal, go back to India and wait for his wife to file that for him. I'm not sure what the process is. I would reserve the last 49 seconds. Fine. We'll hear from the government. Thank you. Good morning. And may it please the Court, I'm Regina Berg, Counsel for the Respondent, John Ashcroft, United States Attorney General. Through its November 19th – excuse me – through its November 19th, 2002, final removal order, the Board denied Mr. Singh's appeal from the immigration judge's asylum denial based on the three reasons given by the immigration judge for the adverse credibility determination. And in addition, the Board gave another reason, affirming the denial based on Mr. Singh's failure to meaningfully address the determination – That seems to imply that the petitioner or the appellant at that point raised the issue, but then in his brief did not sufficiently address the findings by the IJ. Is that what that means? Are you saying that the Board's – the Board actually reviewed the case de novo, and then it adopted and affirmed the immigration judge's decision? Yeah, but you're claiming, I think, that there was some failure to appeal something rather than therefore – Exactly. – a failure to exhaust. Exactly. But as I understand it, the issue was raised. It was just the strength of the argument that the Board was looking at. The Board did not find that Mr. Singh adequately raised the issue so that it would know exactly what it is he was appealing to them from, what the particular reasons were that he disagreed with the Board's – with the immigration judge's adverse credibility determination. We can read that and determine that, but what do you say about the inconsistencies in dates seem to be a little, you know, minor here. I mean, people forget dates a lot. What do you have to say about the findings of inconsistency in the testimony? The immigration judge found that these dates were sufficient, were significant. For instance, the fact that Mr. Singh claimed to be a Sikh and that – What? A Sikh, yes. – to be a Sikh and that he was, in fact, politically active in all of the activities of the Sikh organization, one of the things that the immigration judge found that he should have remembered was the fact that his second arrest was supposedly based on Operation Blue Star. Now, this particular operation is well known throughout the Sikh community. The temple, the golden temple of the Sikhs was basically destroyed and many people were killed. Now, if Mr. Singh claimed that he was arrested as a result of his participation in the fifth annual commemoration of this particular operation, then the normal person would remember the date because it would have been something significant to stand out in his mind. The immigration judge did not buy Mr. Singh's claim that, oh, I was beaten so badly that I can't remember what was going on and I can't remember dates. While petitioner's counsel states to the court that Mr. Singh wasn't given an opportunity to adequately explain his reasons for not being able to adequately remember or give more details, the immigration judge gave Mr. Singh much opportunity. In fact, his own attorney just constantly polled Mr. Singh in order to get answers out of him. And then when the answers came out, they were still inconsistent. There was one inconsistency upon another regarding the date of this Operation Blue Star program. And then the second thing that the immigration judge found significant is Mr. Singh's claim to be a pharmacist who allegedly had treated his brother, but yet he couldn't remember the dates in which he last saw his brother. And initially he said the last time he saw his brother was after a rally, and he was arrested because of his brother's participation in this rally. But yet later on he turned around and he gives another date, and I believe it was probably December or something. Then he turned around later on and said, oh, well, no, my brother was shot, and I went to operate because he was shot in his foot. Oh, it's vague. These are the kinds of things that would lead a reasonable fact finder to question the credibility of the applicant's testimony. And more importantly, the immigration judge looked at Mr. Singh. He was there. Not this court, not petitioner's counsel who's here presently, and not the government's counsel, but the immigration judge was there. And he observed Mr. Singh's demeanor, and he said that he, looking at Mr. Singh, could determine that Mr. Singh's inconsistencies were not a result of a person who was unable to remember, but a person who was he wasn't even nervous, in fact. He said he was a person who was trying to basically put together this incredible story in order to buttress his asylum claim. Now, Ms. Breda, I appreciate what you're saying, but at the same time, we have to pay attention to our case law, which is pretty specific that, one, minor inconsistencies that don't matter. Two, the IJ has to set forth specific and cogent reasons, right, for the credibility finding. And, you know, on both counts, this is not the strongest case I've seen for the government. We would contend that the IJ did, in fact, set forth contingent and strong reasons, and that while even the IJ himself stated that one of the inconsistencies he gave was a minor one, and that one, he said, was the date of the fourth arrest, whether or not it occurred when Mr. Singh was rallying for this 1991 election. He said that was minor, but the other things, the immigration judge found that they were sufficient and they were strong reasons. And the other thing that the court should keep in mind, this court has held consistently that when an immigration judge or when the board decides a credibility determination based on demeanor, that generally that is going to be fatal to an alien's asylum claim. Now, here's what's important. While even if this court determines that the immigration judge's determination was wrong, the fact that Mr. Singh failed at all to specifically challenge any of these determinations to the board, he failed to give the board an opportunity to first address those determinations. Now, while he's done an excellent job in his brief in stating what his specific reasons are for disbelieving or challenging the immigration, the board's final order, he didn't do that for the board. And so consequently the board was left to basically guess at what it is that Mr. Singh was arguing with the immigration judge about. The board determined that because Mr. Singh failed to be specific in terms of what it is he's arguing and left the board to guess, I'll call the court, before I go further to the courts, to Mr. Singh's argument before the immigration judge. It was found at pages 17 through 19 of the administrative record, but in our brief at page 13, excuse me, page 30, Mr. Singh first claimed that the immigration judge stated that based upon body language, Singh's testimony was not credible. This is not a specific and cognate reason for the Supreme Court as the Supreme Court articulated in Sarvia, but then he goes on to talk about something totally different. He doesn't talk about what it is that the immigration judge said about his nervousness that disturbs him. The next page of our brief, page 35, the applicant has stated sufficient, this is what Mr. Singh said, the applicant has stated sufficient facts to show that he has been persecuted in the past. Then he says his father was beaten, but that was not something that was before the board, before the immigration judge, so it could not be considered by the board. And then he goes on to talk about the two arrests, but he doesn't tell exactly what the sufficient reasons is. He says that were not given by the immigration judge. So consequently, the board was trying to pitch through what it is that Mr. Singh thinks was done wrong by the immigration judge. Because Mr. Singh has not specifically stated for the board what his reasons are, then this court has found that it lacks jurisdiction to review Mr. Singh's asylum denial. And in addition, because even in his answering brief to this, his opening brief to this court, Mr. Singh fails to address the fourth reason that the board gave. The board gave three reasons, the three adverse credibility reasons that the immigration judge stated, and finally the board said, in addition, we find that Mr. Singh has failed to meaningfully address the immigration judge's determination. Mr. Singh makes no arguments to that determination by the board. The government would ask that this court would find that because this record contains insufficient evidence to demonstrate that any fact finder would have failed to, would be compelled to find that Mr. Singh has in fact demonstrated his asylum claim that this court should uphold the board's final order. Thank you. All right. Thank you, Mr. Burd. Rebuttal? No rebuttal. All right. Then this case is submitted for decision. We thank both counsel for your argument. Next case on the argument calendar is United States versus Nokon Nguyen.
judges: Thompson, Tashima, Rawlinson